UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JACK S. KANNRY and JOYCE F. KANNRY,

                Plaintiffs,

**<u>MEMORANDUM &
ORDER</u>**
CV 14-1539 (GRB)

        -against-

LIBERTY MUTUAL GROUP, INC., acting by
and through LIBERTY MUTUAL FIRE
INSURANCE COMPANY,

                Defendant.
-----------------------------------------------------------------X

**GARY R. BROWN, United States Magistrate Judge:**

      Before the Court are cross-motions for summary judgment in this matter, which involves a claim against defendant Liberty Mutual Group, Inc. acting by and through Liberty Mutual Fire Insurance Company ("Liberty Mutual"), a Write-Your-Own ("WYO") carrier for the National Flood Insurance Program ("NFIP"), issued to plaintiffs Jack S. Kannry and Joyce F. Kannry for a residential property damaged during Hurricane Sandy.  Docket Entries ("DE") 103, 109. Plaintiffs seek reimbursement for property damage in the basement of the dwelling, based chiefly on the fact that the insurer had reimbursed plaintiffs for similar damage in 2005.  *See, e.g.*, Pls.' Br. 9-14, DE 110.   Interestingly, plaintiffs have not alleged a cause of action under the insurance policy, but rather rely exclusively on a set of state law claims brought pursuant to this Court's diversity jurisdiction in seeking recovery.  Compl. ¶¶ 9-17, DE 1.  Based on the consent of the parties, and an order entered by the Honorable Leonard D. Wexler, this matter is before the undersigned for all purposes.   DE 27.

1

## FACTUAL BACKGROUND

Despite a tremendous volume of documents filed by the parties in connection with these motions, the facts are largely undisputed. Plaintiffs are owners of a single family residence located in Long Beach, New York. Pls.' 56.1 Statement ¶ 1, DE 108-3; Def.'s 56.1 Response ¶ 1, DE 105. The building consists of a three-story structure, including a finished basement. Pls.' 56.1 Statement & Def.'s 56.1 Response ¶ 3.

In October 2005, an extended period of heavy rainfall on Long Island led to flooding and extensive damage of plaintiffs' residence. *Id.* at ¶ 5. Pursuant to the NFIP policy, and based on an evaluation using guidelines promulgated by the Federal Emergency Management Agency ("FEMA"), defendant reimbursed plaintiffs for damages occurring to the home and its contents, but which amounts were not reduced in accordance with FEMA's guidelines for damage to contents and structural elements occurring in a basement. *Id.* at ¶¶ 6, 12.

In October 2012, the home was again damaged by flooding, this time as a result of Hurricane Sandy, which included the permeation of 3½ feet of ocean water, sewage and fuel oil into the finished basement area of the home. *Id.* at ¶ 10. An adjustor, hired on behalf of defendant, conducted a review of the damage, and advised plaintiffs that he would advise defendant to reserve somewhere between $120,000 to $140,000 to cover the damage under the NFIP policy. *Id.* at ¶¶ 11, 17. Plaintiffs ultimately claimed approximately $121,000. *Id.* at ¶ 18. A report by the adjustor, dated March 15, 2013, determined that the lowest floor of the dwelling constituted a "basement" under FEMA guidelines, which provided for extremely limited contents coverage and reduced amounts for repairs.[1] As a result, defendant paid

---

[1] The existence of the March 15, 2013 report is ultimately set forth in the complaint. Compl. ¶ 24. Both parties fail to mention the March 15, 2013 report in their respective 56.1 Statements. However, both parties agree that the adjuster determined that the lower portion of the Property was below grade on all sides, thus constituting a basement. Compl. ¶ 24; Pls. Br. 12; Def.'s Br. (citing Decker Aff. ¶ 12, DE 106). Accordingly, the Court overlooks the failure to comply with Local Civil Rule 56.1. *See Allen v. Cty. of Nassau*, 90 F. Supp. 3d 1, 3 n.2

plaintiffs approximately $34,000.  Pls.' 56.1 Statement & Def.'s 56.1 Response ¶ 22.  In this action, plaintiffs set forth claims of waiver and estoppel, misrepresentation, bad faith and punitive damages but, notably, not breach of contract.  Compl. ¶¶ 9-17.

On its motion, defendant provides evidence, which is uncontroverted, that the independent adjustor determined that the lowest level of plaintiffs' residence "was below grade on all sides, thereby constituting a basement under the SFIP."  Def.'s Br. 20, DE 107 (citing Decker Aff. ¶ 12); *accord* Compl. ¶ 24; Pls.' Br. 12.  Additionally, defendant avers that, after the plaintiffs raised concerns about the propriety of the basement designation, it engaged another adjuster to inspect the property, but that plaintiffs refused to provide him access to the interior of the property.  Decker Aff. ¶ 16.  Cooperation in the investigation of claims is required under the terms of the subject SFIP claims.  *See* SFIP Article VII(J)(6).  Plaintiffs do not dispute this claim, nor do they dispute that they failed to file a pre-suit sworn proof of loss as required under the SFIP.  Kannry Aff. ¶ 6, DE 108.  Rather, plaintiffs essentially concede these points, which would be fatal to an action to recover pursuant to the terms of the policy, expressly relying on alternative theories of recovery.  *Id.*[2]

Finally, on this motion, Liberty Mutual has demonstrated that, as part of its role as a WYO carrier, it is a fiscal agent of the United States, and that federal funds have already been disbursed in defending plaintiffs' state law claims.  Def.'s Br. 20-21.  Plaintiffs do not dispute these facts.

---

(E.D.N.Y. 2015).

[2] In his affidavit, Mr. Kannry suggests that he allowed an inspection of the premises, but this clearly refers to the earlier inspection.  *Id.*  In a court appearance before the undersigned, Mr. Kannry acknowledged that he refused the second inspection and similarly declined the court's invitation to have an inspector re-examine the premises, indicating he would rely solely on the 2005 determination.  *See, e.g.*, May 9, 2014 Tape at 11:49.  Based on this record, it is reasonable to conclude that the post-Hurricane determination by the adjuster that the lower level of plaintiffs' dwelling is a "basement" as defined for the purposes of the SFIP is undisputed.

## LEGAL STANDARD

These motions for summary judgment are decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), which discussion is incorporated by reference herein.

## DISCUSSION

*A. Conditions Precedent*

Primarily, defendant seeks summary judgment predicated upon plaintiffs' failure to comply with the jurisdictional prerequisites under the SFIP. Notably, there are no material facts in dispute concerning plaintiffs' failure to (1) file a sworn proof of loss regarding the additional amounts at issue and plaintiffs' failure to (2) cooperate in the investigation of the subject claim by refusing admission to a duly authorized adjuster seeking to verify whether plaintiffs' finished basement was below grade. Article VII(R) of the SFIP provides that the insured "may not sue us to recover money under this policy unless you have complied with all the requirements of the policy." Those requirements include the provision of a signed, sworn proof of loss and cooperation with an adjuster investigating the claim. *See* SFIP Article VII(J)(4) & (6).

In *Jacobson v. Metro. Prop. & Cas. Ins. Co.,* 672 F.3d 171 (2d Cir. 2012), the Second Circuit rejected the appeal of a homeowner whose insurer denied his SFIP claim based upon the filing of an incomplete proof of loss statement. In reaching this determination, the Second Circuit joined several other circuit courts in holding that requisites such as the proof of loss requirement "must be strictly construed and enforced." *Id.* at 175 (collecting cases). The Court of Appeals specifically rejected the notion that equitable considerations could outweigh these requirements, holding:

> the National Flood Insurance Program is federally subsidized and enables consumers to obtain flood insurance which virtually would be impossible to purchase in the marketplace. Requiring [plaintiffs] to turn square corners when dealing with the Treasury does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury.

*Id.* at 176 (internal alterations omitted) (citation omitted). Thus, plaintiffs' failure to comply with the policy requirements precludes recovery under the policy.

B. State Law Claims

Plaintiffs do not directly controvert defendant's argument concerning their failure to comply with the conditions precedent under the policy. Rather, they rely on the fact that the complaint only purports to set forth state law claims, thereby contending that arguments made under the NFIP are inapplicable. This approach is unavailing.

Plaintiffs' position ignores the fact that, in entering into the SFIP, plaintiffs expressly agreed that:

> This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.), and Federal common law.

SFIP Article IX. Thus, pursuant to the policy, plaintiffs have agreed that disputes relating to "the handling of any claim under the policy" must be brought under federal law. *Id.* The matters alleged here, which can only be characterized as such a dispute, must be analyzed under federal law.

In *Jacobson*, the Second Circuit roundly rejected "the idea that the SFIP . . . must be interpreted like any private insurance contract." 672 F.3d at 175. *Jacobson* sets the stage by elucidating the considerations that apply to such private insurance litigation:

5

> Ordinarily, such a construction is to the benefit of the insured: strict construction makes the terms of the policy easier to understand and easier to satisfy. In some contexts, the result following such a construction may offend equitable principles. When that occurs, a court may be justified in invoking other principles on behalf of an innocent insured in order to accomplish the design of an insurance policy.

*Id.* The Circuit outlined the special considerations that apply when construing the SFIP:

> But when private parties make demands on the public fisc, different principles are at stake. "Where federal funds are implicated, the person seeking those funds is obligated to familiarize himself with the legal requirements for receipt of such funds." *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 388 (5th Cir. 2005). "Protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law.... [T]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.,* 467 U.S. 51, 63, 104 S. Ct. 2218, 81 L. Ed.2d 42 (1984). In the context of federal insurance policies, the Supreme Court has long held that an insured must comply strictly with the terms and conditions of such policies. *See Fed. Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384–85, 68 S. Ct. 1, 92 L. Ed. 10 (1947).

*Id.*

Indeed, the Committee of Magistrate Judges assigned to manage the caseload arising from Hurricane Sandy recognized early in the process that state law claims, though commonly pled, were permissible, if at all, only in unusual circumstances.[3] Case Management Order ("CMO") 1, No. 14-MC-41, DE 243. As such, in CMO 1, the Committee ruled as follows:

> Counsel for defendants have identified several state law claims common to many of plaintiffs' cases, which defendants contend should be dismissed, including, *inter alia*, state law claims alleging bad faith or negligent claims handling, certain forms of relief, such as punitive damages, treble damages, and/or attorneys' fees, and requests for jury trial. A number of district judges have already dismissed such claims, finding that the allegations are not viable under New York law. *See.*

---

[3] The torrent of cases emanating from Hurricane Sandy included a wide range of situations, including allegations and evidence of truly egregious conduct. *See, e.g.*, *Raimey v. Wright Nat. Flood Ins. Co.,* 76 F. Supp. 3d 452 (E.D.N.Y. 2014) (discussing altered engineering reports used to deny claims). Therefore, there may well be circumstances in which state law claims arising from conduct related to NFIP policies may be permissible against certain actors. This, however, is not such a case.

6

> *e.g. Funk v. Allstate Ins. Co.,* No. 13 CV 5933 (JS) (GRB) (E.D.N.Y. Dec. 13, 2013); *Dufficy v. Nationwide Mut. Fire Ins. Co.*, No. 13 CV 6010 (SJF) (AKT) (E.D.N.Y. Dec. 2, 2013). Rather than require each judge to resolve motions to dismiss such claims, plaintiffs are ORDERED within 14 days of the Order to voluntarily withdraw such claims, or if not, submit a letter to the assigned judge, explaining the legal basis for continuing to pursue such claims in any particular action.

CMO 1 at 5-6. Plaintiffs' letter response to this directive provides as follows:

> [T]he linchpin of our claims is waiver and estoppel, which acts as a bar to defendants now claiming "basement" no pay arguments, when in 2005-06, following an earlier lower floor flood in the same residence, with the same insurer and policy, and the same FEMA regulations/guidelines as currently, it was not merely one or more representations as to compensability relied upon by plaintiffs, but rather it was the conduct of the defendant insurer, presumably with at least an implied FEMA imprimatur. That flood claim was fully paid within the policy limits, both as to building and contents losses. Thus, when, in 2012, following Hurricane Sandy, the insurer's FEMA certified adjuster initially advised as to the same conclusion, it was not simply his representations in a vacuum being relied upon by plaintiffs, but rather as a consistent affirmation of the prior conduct of the insurer on the earlier flood claim. Such prior affirmative conduct was in the form of flood claim approval and payment, not simply misspoken or later denied representations. That is the essence of the waiver and estoppel application here.

DE 17.

Plaintiffs' "lynchpin" lacks foundation in the law. Indeed, in reaching its determination in *Jacobson*, the Court of Appeals provided an analysis which appears to entirely undermine plaintiffs' "waiver and estoppel" theory:

> In New York, in the context of private insurance, a defendant insurance company can sometimes waive the filing of a proof of loss (or become estopped from enforcing a proof-of-loss requirement) by repudiating a policy. Jacobson's attempt to classify Metropolitan's rejection as repudiation supposes that the doctrine of repudiation as Jacobson has defined it applies in the context of NFIP policies. That supposition is dubious. At its heart, the doctrine of repudiation rests on notions of waiver and estoppel: the rationale of the doctrine is that an insurer may not rely on the terms of a policy whose binding effect it has disclaimed, and an insured should not be held to strict compliance with claim rules where the insurer has announced that it will not pay any claim under the policy regardless of

7

the insured's compliance. **It is well established, however, that the actions of an insurance company under the NFIP cannot waive requirements set by the government, or operate as an estoppel against the government.** The Supreme Court has made clear that "judicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized." It is thus at best questionable whether the doctrine of repudiation has any application in the context of policies issued under the NFIP.

672 F.3d at 176-77 (citations omitted and emphasis added). Moreover, "a defense based on lack of coverage is not subject to waiver under New York law." *Palmieri v. Allstate Ins. Co.,* 445 F.3d 179, 188 (2d Cir. 2006). Based on these authorities, plaintiffs attempt to end-run the requirements of the NFIP entirely by forbearing to sue under the policy is without basis. *Van Holt v. Liberty Mut. Fire Ins. Co.,* 163 F.3d 161, 167 (3d Cir. 1998).

C. Basement Limitations

The *Jacobson* court examined whether its determination created the kind of "inequitable result" found in *Gowland v. Aetna,* 143 F.3d 951 (5th Cir.1998). The Circuit determined that its strict enforcement of the NFIP policy requisites did not create such an inequity because, based on the facts of that case, "Jacobson's claim would not benefit from a more liberal construction of the policy's terms and requirements." *Id.* at 176.

Much the same can be said of the instant case. Even assuming *arguendo* that plaintiffs could proceed on the merits of their claim, the outcome would be the same. The SFIP clearly defines the nature of, and exclusions which apply to, claims relating to a "basement." "The SFIP defines a 'basement' as '[a]ny area of the building, including any sunken room or sunken portion of a room, having its floor below ground level (subgrade) on all sides.'" *Destefanis v. Fugate*, No. CV 12-4730(LDW), 2013 WL 6796425, at *1 (E.D.N.Y. Dec. 19, 2013) (quoting 44

C.F.R. Pt. 61 App. A(1), Art. II(B)(5)). There is no dispute in the instant case that, notwithstanding the seemingly erroneous determination made in 2005, the lowest level of plaintiffs' residence is subgrade. Compl. ¶ 24; Pls. Br. 12; Def.'s Br. (citing Decker Aff. ¶ 12, DE 106). The refusal of plaintiffs to admit an adjuster to confirm this fact, or accept the Court's suggestion that an expert be permitted to measure the grade of the property, further buttresses this determination. Thus, plaintiffs' claim, which is procedurally barred for the reasons set forth herein, also fails on the merits.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is GRANTED, and plaintiffs' motion for summary judgment is DENIED. The Clerk is directed to close the case.

**SO ORDERED**.

Dated: Central Islip, New York
December 23, 2015

/s/ GARY R. BROWN
Gary R. Brown
United States Magistrate Judge